IN THE UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

No. 26-12270-G
United States District Court, Southern District of Florida
District Court Docket No.:  0:26-cv-60289-WPD

CHARLES JACOB STRATMANN

Appellant,

v.

SEACOAST NATIONAL BANK

Appellee.

## APPELLEE'S RESPONSE TO APPELLANT'S EMERGENCY MOTION FOR STAY OF CONFIRMATION OF JUDICIAL SALE AND FOR INJUNCTION PENDING APPEAL

KRISTEN M. FIORE, BCS (25766)
**AKERMAN LLP**
201 East Park Avenue, Suite 300
Tallahassee, Florida  32301
Telephone:  (850) 224-9634
Facsimile:  (850) 222-0103
kristen.fiore@akerman.com

Attorneys for Appellee

**APPELLEE'S RESPONSE TO APPELLANT'S EMERGENCY MOTION FOR STAY OF CONFIRMATION OF JUDICIAL SALE AND FOR <u>INJUNCTION PENDING APPEAL</u>**

Appellee Seacoast National Bank ("Seacoast") opposes Appellant Charles Jacob Stratmann's ("Stratmann") Emergency Motion for Stay of Confirmation of Judicial Sale and for Injunction Pending Appeal [Doc. 3] ("Motion"). The Court should deny the Motion.

The Motion seeks to stay the sale and confirmation of the M/V Slow Ur Roll II (the "Vessel"), both of which have already occurred.[1] The Motion also seeks to enjoin disbursement of proceeds from the Vessel sale, and transfer of the Vessel's title pending appeal. The Court should deny the Motion because Stratmann cannot satisfy the stringent standard required to obtain the extraordinary remedy of a stay. Additionally, Stratmann's objections to the sale do not satisfy the exacting admiralty standard for disturbing a judicial sale.

The balance of harms and the public interest overwhelmingly favor prompt confirmation of the judicial sale and weigh against any stay pending appeal.

---

[1] Stratmann also filed an Emergency Motion of Appellant for Stay of Judicial Sale [Doc. 2][1] ("Sale Motion"). The Sale Motion sought to stay the judicial auction of the Vessel, but the Vessel was sold at a public U.S. Marshals' auction on June 26, 2026, before the Sale Motion was docketed on July 2, 2026.

**PROCEDURAL BACKGROUND**

Seacoast filed an admiralty foreclosure action against the Vessel, a 2008 Everglades 350LX Express, USCG Official No. 1220768, *in rem,* and a breach-of-promissory-note action against the owner of the Vessel, Starboard Yacht Group LLC ("SYG"), *in personam*, based on a defaulted Preferred Ship Mortgage. [DE 1.]

Stratmann is SYG's sole member and manager. [DE 43 at 1.] Stratmann is a non-lawyer who attempted to appear for SYG on numerous occasions, despite having been repeatedly admonished by the District Court that he cannot represent SYG. [DE 11, 12, 13, 14, 15, 59, 60, 61, 67, 68.] Stratmann initially moved to intervene on the basis of his liability for any deficiency under the guaranty of the promissory note. [DE 17.] Stratmann was denied both permissive and mandatory intervention. [DE 30.]

On March 12, 2026, Stratmann filed a claim against the Vessel, and did not mention either (a) a seaman's wage claim, or (b) trade secrets or other intellectual property rights. [DE 41.] Instead, Stratmann's claim was based on his guaranty liability and "subrogation rights." [*Id.*] Stratmann's claim was dismissed, as the District Court held he lacked any cognizable interest in the Vessel. [DE 53.]

The deadline to file claims against the Vessel passed on March 18, 2026. [DE 34, Supplemental Rule C(6), and Local Admiralty Rule C(6)]. Before that deadline, Stratmann did not raise the claims he now asserts to this Court: a seaman's wage lien

and an interest based on his personal ownership of "trade secrets" and intellectual property rights in the Vessel.

On May 21, 2026, the District Court entered Default Judgment for Seacoast for $168,773.21, foreclosing the mortgage, condemning the Vessel to judicial sale by the U.S. Marshal, subject to confirmation by the court. [DE 70.]

On June 5, 2026, Stratmann filed a Verified Claim for Seaman's Wages, asserting a maritime wage lien between $300,000 – $478,225, while acknowledging that he lacked contemporaneous records of his time spent on the Vessel and that his time was reconstructed. [DE 72.] On June 23, 2026, the District Court struck and denied the seaman's wage claim [DE 79], finding that, in addition to being untimely under Supplemental Rule C(6) and Local Admiralty Rule C(6), Stratmann "is not entitled to seaman's wages because he is the sole member and manager of Starboard Yacht Group, LLC, which is the owner of the Vessel, and therefore he is not a 'stranger to the vessel,'" citing *Sasportes v. M/V Sol de Copacabana*, 581 F.2d 1204, 1208 (5th Cir. 1978).[2]

On June 22, 2026, Stratmann filed an Emergency Motion to Stay Judicial Sale, which relied on his stricken claim for seaman's wages and (incorrectly) alleged that Akerman LLP had a conflict of interest. [DE 75.] On June 25, 2026, the District

---

[2] The Court should reject Stratmann's contention that the District Court did not consider the seaman's wage claim "on the merits." [Doc. 3-1 at pp. 2, 5; Doc. 3-2 at p. 2; Doc. 3-3 at 2.]

Court denied the motion, holding that "Stratmann's allegations regarding purported conflicts are without merit." [DE 84.]

On June 26, 2026, the U.S. Marshals Service (the "Marshals") conducted a competitive public judicial sale of the Vessel at the Fort Lauderdale federal courthouse. [DE 87.] Ten bidders registered, generating 20 bids in addition to Seacoast's opening credit bid of $50,000. [DE 99.] The Marshals called "going once" and "going twice" before closing bidding. [*Id.*] The Vessel sold for $160,000 to William Wilson, who tendered a certified deposit of $25,000 and subsequently paid the $135,000 balance in full. [DE 87, 98.]

On June 29, 2026, the District Court denied Stratmann's "emergency" motions to preserve evidence, hold sale proceeds in the court registry, for reconsideration of his wage claim, and to stay the sale pending appeal. [DE 82, 85, 91.] As to the request to stay the judicial sale, the court held it was "denied as moot as the sale has already occurred; in any case, Stratmann failed to persuade the Court that a stay would have been warranted." [DE 91.]

Stratmann filed this appeal on June 29, 2026. [DE 88, 94.] On July 1, 2026, the District Court denied Stratmann's Objection to Confirmation "for lack of jurisdiction as this action is presently on appeal." [DE 92, 93.] After both Stratmann and Seacoast requested that the District Court determine confirmation of the sale of the Vessel, and asserted that the District Court retained jurisdiction to do so [DE 97,

98], the District Court overruled and denied all of Stratmann's objections to the sale. [DE 107.] On July 15, 2026, the Clerk entered a confirmation of the sale of the Vessel. [DE 109.]

**ARGUMENT**

**I.      THE REQUEST TO STAY THE SALE, CONFIRMATION, OR TRANSFER OF THE VESSEL IS MOOT.**

Stratmann asks the Court to both stay the sale and stay confirmation of the sale. The Court must deny these requests as moot. The sale of the Vessel has already occurred, and the sale has been confirmed.

The Motion also requests that the Court preclude the transfer of title to the purchaser and prevent the purchaser from taking possession of the Vessel. [DE 3-1, 11.] However, this request fails as a matter of law. After the sale occurred and was confirmed, title transferred to the purchaser and all other parties' rights in the Vessel were terminated. *Salazar v. Atl. Sun*, 881 F.2d 73, 75 (3d Cir. 1989) ("the order of confirmation [e]ffectively terminated the owner's rights to title and possession of [the vessel]"); *Cmty. Bank of Lafourche v. Lori Ann Vizier, Inc.*, 541 F. App'x 506, 514 (5th Cir. 2013) ("there is no statute that permits us to reach the Vessel after confirmation of the marshal's sale"). Therefore, this Court should deny the Motion's request to stay issuance of the bill of sale to the purchaser or stay transfer of the Vessel. The Vessel has been sold, and the only *res* remaining in the court's possession is the proceeds of the Vessel sale.

6

**II.  THE COURT SHOULD DENY THE REQUEST TO STAY BECAUSE STRATMANN CANNOT SATISFY THE STANDARD FOR A STAY.**

Even if the Court could stay or enjoin the effectiveness of the confirmation of the sale, the transfer of the Vessel, the issuance of the bill of sale, or the distribution of proceeds from the sale, Stratmann is not entitled to any stay or injunctive relief.

"An injunction pending appeal is an extraordinary remedy." *State of Florida v. Dep't of Health & Human Services*, 19 F.4th 1271, 1279 (11th Cir. 2021) (citation and internal quotation marks omitted).  A party seeking a stay or injunctive relief pending appeal must demonstrate: (1) a substantial likelihood that it will prevail on the merits of the appeal; (2) a substantial risk of irreparable injury to the movant absent a stay; (3) no substantial harm to other interested persons; and (4) no harm to the public interest. *Id.* (citing *Touchston*, 234 F.3d at 1132); *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F. 4th 1363, 1370 (11th Cir. 2022); *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986). The first two factors are "most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Id.* (citation and quotation marks omitted). It is instead "an exercise of judicial discretion," and "[t]he propriety of its issue is dependent upon the circumstances of the particular case." *Id*. (citations omitted). Stratmann fails on all

four factors, and this Court should not exercise its judicial discretion to stay any aspect of the case.

**1.  There Is No Likelihood of Success on the Merits.**

Stratmann's reasons for relief fall into two categories: (1) his objections to the sale, and (2) his alleged interests in the Vessel.  He is not likely to succeed on either.

i.  <u>Stratmann's Sale Objections Lack Merit</u>.

Admiralty courts exercise "extreme caution" before disturbing a judicial sale, and the recognized grounds are narrow: "fraud, collusion, or gross inadequacy of price … as to result in unfairness." *Wong Shing v. M/V Mardina Trader*, 564 F.2d 1183, 1188-89 (5th Cir. 1977). "The policy of inspiring confidence in sales under the supervision of the court favors confirmation of a sale made to the highest bidder at a fairly conducted public auction." *Salazar v. Atl. Sun*, 881 F.2d 73, 81 (3d Cir. 1989) (citation omitted).

In this case, the Vessel sale was competitively conducted with ten registered bidders, an opening credit bid of $50,000, and twenty outbids, resulting in a sale at $160,000. [DE 99.]  After the sale, there was no upset bid, nor did any disappointed bidder raise any objection to the sale procedure.

However, Stratmann asserts that the sale should be enjoined because he believes the price was inadequate, relying on a two-year-old, unverified appraisal conducted without a trial run or testing of the Vessel's equipment. This appraisal

does not establish that the auction price was too low or that the Court should disturb the Marshals' sale:

> [W]here there is no certainty that a resale will produce a higher price, the court is justified in confirming the sale. To do otherwise would prejudice the lien holders who must continue to go unpaid. Refusing confirmation in such situations would also prejudice the purchaser. The highest bidder at a sale should reasonably be allowed to believe that he will receive the benefit of his bargain unless a better price is offered, in which case he may increase his own bid."

*Wong Shing*, 564 F.2d at 1189.

Courts have recognized that a creditor's judgment amount and a property's appraisal value are often far greater than the property's hypothetical sales price at forced auction. *Redus Fla. Commercial, LLC v. Coll. Station Retail Ctr., LLC*, 777 F.3d 1187, 1193 n. 15 (11th Cir. 2014). Nevertheless, there is a "widely applicable and long-held presumption that a property's sales price at a valid judicial sale is conclusive as to the property's value." *Id.* (citation omitted). Auctions "should not be empty exercises." *Salazar v. Atl. Sun*, 881 F.2d 73, 81 (3d Cir. 1989) (citing *First Nat'l Bank v. M/V Lightning Power,* 776 F.2d 1258, 1261 (5th Cir. 1985)).

Other than a stale, unverified appraisal, Stratmann has not presented any evidence reflecting the value of the Vessel at the time of the auction.

Stratmann also argues that a telephone bidder lost communication with their relay person and was therefore "prevented from bidding." [Doc. 3-1.] These allegations do not establish fraud, collusion, or any defect in the auction process.

9

Particularly telling, that telephone bidder made no attempt to come forward after the auction to object that the procedures were inadequate or to tender an upset bid. The record reflects that the Marshal called "going once" and "going twice" before closing bidding. [DE 99.] Even if another bidder intended to submit a bid—the proof of which is lacking in the record—such speculation cannot serve as a basis to enjoin the sale. *See U.S. v. Brouri*, No. 12-20734-CIV, 2019 WL 12275953, at *5 (S.D. Fla. Dec. 13, 2019), *report and recommendation adopted*, No. 12-20734-CIV, 2020 WL 9549520 (S.D. Fla. Feb. 4, 2020).

A court has "considerable discretion . . . in deciding whether to confirm a sale over an objection." *Citibank, N. A. v. Data Lease Fin. Corp.*, 645 F.2d 333, 339 (5th Cir. Unit B 1981). Here, Stratmann has not adduced evidence showing the District Court abused its discretion in overruling and denying his objections and the confirmation of the sale.

Stratmann next argues that the Sales-Agent Agreement's execution date means National Liquidators could not have marketed. [Doc. 3-1.] However, whether National Liquidators marketed the Vessel is irrelevant to determining whether the sale should be confirmed. In support, Stratmann cites *In re Chateaugay Corp.*, 10 F.3d 944, 956-57 (2d Cir. 1993)—which has nothing to do with a sale confirmation—and *Combs v. Aetna Finance Co.*, 616 F.2d 976, 979 (7th Cir. 1980)—which does not appear to exist.

Stratmann also argues that National Liquidators served simultaneously as court-appointed substitute custodian [DE 23] and commission-earning sales agent, creating a "structural conflict." [Doc. 3-1.] But a percentage-based commission structure is designed to incentivize a competitive sale with the highest possible price. *Redus Fla.*, 777 F.3d at 1195. Furthermore, National Liquidators' commission remains subject to court approval in a costs proceeding that has not yet occurred, and whether granted or not, is irrelevant to whether the sale was regularly conducted. And again, fifty showings, ten registered bidders, and twenty competitive bids belie any suggestion that the sale process was flawed.  [DE 99.]

Lastly, all of Stratmann's sale objections were flawed, and thus unlikely to succeed on the merits, because he failed to satisfy the deposit requirement. Any party who objects to the sale of a vessel must deposit with the U.S. Marshals "the cost of keeping property for at least fourteen (14) days." *See* S.D. Fla. Local Admiralty Rule E(17)(g)(ii).  The District Court will not consider the objection without proof of this deposit. *Id*. Stratmann admitted the requisite deposit was not paid. [DE 100 at 6.] Therefore, Stratmann's objections could never have succeeded on the merits because he failed to satisfy the preconditions for raising them.

ii.    Stratmann's Seaman's Wage Claim Lacks Merit.

Stratmann also has no likelihood of success on his seaman's wage argument. Specifically, the District Court struck and denied Stratmann's claim for seaman's

11

wages because it was "untimely under Supplemental Rule C(6) and Local Admiralty Rule C(6)," and because "as a matter of law, Stratmann is not entitled to seaman's wages because he is the sole member and manager of Starboard Yacht Group, LLC, which is the owner of the Vessel, and therefore he is not a 'stranger to the vessel,'" citing *Sasportes*. *See* 581 F.2d at 1208; [DE 79.]

Supplemental Rule C(6) and S.D. Fla. Local Admiralty Rule C(6) require that a person who asserts a right of possession or any ownership interest in the property that is the subject of the action must file a verified statement of right or interest within 14 days after the execution of process, or within the time the court allows. The "statement of right or interest must describe the interest in the property that supports the person's demand for its restitution or right to defend the action." *Id*.

The only timely and verified claim Stratmann filed was his purported claim in the Vessel as "guarantor" of the Vessel's obligations, and as managing member of the Vessel owner, SYG. [DE 41.] Nowhere in his verified claim, his subsequent Answer [DE 43], or any of his other filings made before Judgment did Stratmann ever assert that he was owed "wages" from the Vessel. By asserting and defining his claim or interest in the Vessel [DE 41], but failing to list any interest in wages, Stratmann waived any claim he had to wages. *Cent. Baptist Church of Albany, Georgia, Inc. v. Church Mut. Ins. Co.*, 146 F.4th 1003, 1011 (11th Cir. 2025) ("A

12

waived claim or defense is one that a party has knowingly and intelligently relinquished[.]").

In any event, he has no seaman's wage claim as a matter of law. Stratmann is the sole member and manager of SYG, which owns the Vessel. [DE 43 at 1.] The law is clear that an owner, part owner, or joint venturer of a vessel cannot hold a maritime lien against the vessel because they are "not strangers to the vessel." *Sasportes v. M/V Sol de Copacabana*, 581 F.2d at 1207; *Fulcher's Point Pride Seafood, Inc. v. M/V Theodora Maria*, 935 F.2d 208, 211 (11th Cir. 1991); *Beech v. FV Wishbone*, 113 F. Supp. 3d 1203, 1216 (S.D. Ala. 2015); *The Odysseus III*, 77 F. Supp. 297, 299 (S.D. Fla. 1948); *Security Pacific Nat. Bank v. Ol.s. Pacific Pride*, O/N 621200, 549 F. Supp. 53, 54 (W.D. Wash. 1982).

The "stranger to the vessel" exception doctrine is founded in the equitable notion that those who share responsibility for incurring the debts of the vessel ought not be reimbursed out of that vessel's proceeds to the detriment of other lienholders. *Medina v. Marvirazon Compania Naviera, S.A.*, 709 F.2d 124, 125 (1st Cir. 1983). Moreover, allowing owners' liens would open the door to fraud and collusion by persons owning an interest in a vessel. *Security Pacific Nat. Bank*, 549 F. Supp. at 54.

These precise considerations govern here. Stratmann alleged he is the "sole member and manager" [DE 43 at 1] and "managing member" [DE 41 at 3] of the

owner of the Vessel. As he declared in support of his prior attempt to intervene in this lawsuit, Stratmann serves as a guarantor "on every SYG obligation" and bears "unlimited personal liability" for every judgment entered against SYG. [DE 18 at 2.]

Based on his own previous sworn assertions, it is clear that Stratmann "looks, thinks, acts, and profits like an owner." *Sasportes*, 581 F.2d at 1209. Unlike seamen who work on a vessel for wages, Stratmann, who failed to keep contemporaneous time records, "looked to a share in the profits" for his return, and therefore has no valid maritime lien. *Fathom Expeditions, Inc. v. M/T Gavrion*, 402 F. Supp. 390, 396 (M.D. Fla. 1975). Accordingly, Stratmann has not demonstrated any likelihood of success on his claim for seaman's wages, and this factor weighs against a stay.

iii.    Stratmann's Other Interests in the Vessel Lack Merit.

Stratmann's last argument is that the Vessel contains intellectual property, or trade secrets, that he personally owns. Notably, like Stratmann's seaman's wage claim, Stratmann failed to raise this interest in his initial appearance [DE 13], in which he described the Vessel as a "business asset"; in his requests to intervene [DE 17, 19, 29]; in his Verified Claim of Interest [DE 41]; or in his Answer, Affirmative Defenses, and Counterclaim [DE 43]. Nor did Stratmann raise this claim in any other filings before entry of the Judgment. On May 21, 2026, the Judgment was entered, holding that Plaintiff's Mortgage was "superior to the interests of Borrower or anyone else claiming a possessory interest in the Vessel." [DE 70 at ¶ 4.]

14

Even after judgment was entered, and up to two days before the sale, Stratmann referred to the Vessel as containing "SYG work product" and that the Vessel was "SYG's demonstration, R&D, and integration platform," and contains "proprietary SYG integration work." [DE 82.] In his declaration filed two days before the sale, Stratmann asserts that the proprietary equipment on the Vessel was "developed by me **on behalf of SYG LLC**" [DE 83 at 4], ""developed through **SYG LLC's** R&D program" [DE 83 at 5] and "was **developed solely by SYG LLC** through original R&D work." [DE 83 at 5.] Thus, two days before the sale, Stratmann's sworn declaration asserts SYG's ownership of the alleged proprietary equipment on the Vessel, describing his own role as having performed the work "on behalf of" SYG. Even after Stratmann pivots to claiming that it is his personal property a day later [DE 85], as he does in this appeal, he then switches back to referring to the technology as "developed under **Starboard Yacht Group's trade-secret** methodology." [DE 97.]

The principle of party presentation requires parties to "frame the issues for decision," and parties are therefore "responsible for advancing the facts and argument entitling them to relief." *U.S. v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020). "To prevail on a particular theory of liability, a party must present that argument to the district court." *Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011). A district court is not required, and indeed is not permitted, to concoct a

15

theory of liability "from facts never alleged, alluded to, or mentioned during the litigation." *Id.*

Additionally, for the same reasons that Stratmann's wage claim is untimely and waived under Supplemental Rule C(6) and S.D. Fla. Local Admiralty Rule C(6), Stratmann's assertion of a personal intellectual property interest, or trade secret interest, in the Vessel is likewise untimely and was waived by his failure to raise it until well after the Judgment was entered and all the way up to the day before the Vessel sale.

Furthermore, even if Stratmann had an interest in the Vessel, that interest would have been junior to Seacoast's Preferred Ship Mortgage, and the sale proceeds did not satisfy the preferred mortgage lien. *See* 46 U.S.C. § 31326 (the preferred mortgage lien has priority over all claims except expenses and fees, costs imposed by the court, and preferred maritime liens).

In sum, none of Stratmann's grounds for a stay or injunction of any aspect of the Vessel sale have any likelihood of success on the merits, and this factor weighs heavily against any stay.

### 2. Stratmann Cannot Demonstrate Irreparable Harm.

The risk of "irreparable harm" is also a critical factor in determining whether a stay should issue, yet the existence of irreparable harm does not always warrant a stay. *Nken*, 556 U.S. at 433. The key word in this consideration is *irreparable*. "Mere

injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough." *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987).

Stratmann's asserted irreparable injuries resulting from the sale of the Vessel are: (1) that his personal intellectual property rights will be lost; (2) that evidence on the Vessel will not preserved for other civil proceedings; and (3) the extinguishment of any "equity" in the Vessel. None of these is an "irreparable" harm, and many are not likely injuries at all, given that Stratmann's personal intellectual property claim and any "equity" are nonexistent. *See supra*. And Stratmann's speculation that he may need the Vessel as evidence for his other lawsuits presents purely theoretical harms that assume future events in various litigation matters, which does not satisfy the "irreparable" injury standard for a stay. *In re Freedom Unlimited*, 489 F. Supp. 3d 1328, 1338 (S.D. Fla. 2020).

Only monetary or economic damages are at issue, and "the possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against" a stay. *Nken*, 556 U.S. at 434. Stratmann identifies no irreparable injury that cannot be remedied by monetary relief if he were to prevail on appeal—which, he cannot.

**3.     Harms to Others and Public Interest Favor Denial.**

The balance of equities overwhelmingly favors prompt confirmation of the sale. A stay would prejudice: (1) the purchaser, William Wilson/QF Products LLC, who has already paid the full purchase price of $160,000 and is entitled to receive title to the Vessel; (2) the secured creditor, Seacoast, which holds a final judgment of $168,773.21 and continues to go unpaid while confirmation is delayed; and (3) the substitute custodian, National Liquidators, which continues to bear responsibilities and costs for the Vessel. The public interest likewise favors prompt confirmation of judicial sales. *See Wong Shing*, 564 F.2d at 1189; *Hyde v. Irish*, 962 F.3d 1306, 1309 (11th Cir. 2020) ("justice delayed is justice denied").

Further delay serves only to multiply costs and prejudice the parties who relied upon the integrity of the court-ordered sale.

**4.     Stratmann's Allegations of a Disqualifying Conflict of Interest Are Meritless and Have Been Rejected by Two Federal Judges.**

Moreover, Stratmann devotes a substantial portion of his Motion to renewed allegations that Akerman LLP ("Akerman") has a disqualifying conflict of interest. These allegations have been raised repeatedly, have been rejected repeatedly, and should be rejected again.

Stratmann asserts that Akerman has a conflict of interest because it has represented parties against SYG in two cases: the underlying case and *Starboard Yacht Group LLC v. Contessa Marine Research LLC et al.*, No. 23-61696-CIV-

Singhal. Stratmann further claims that Akerman has also represented various other interests adverse to Stratmann.[3] However, concurrent parallel representations of clients against a common defendant or adversary do not create a conflict. Florida Rule 4-1.7(a) prohibits a lawyer from representing a client if the representation of one client will be directly adverse to another client, or if there is a substantial risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client. "There is no conflict of interest inherent in an attorney's representation of multiple plaintiffs or defendants. Consequently, there is no per se prohibition of the practice under ethical rules which govern the conduct of lawyers." *In re Covenant Fin. Group of Am., Inc.*, 243 B.R. 450, 455 (Bankr. N.D. Ala. 1999).

Stratmann also advances a confusing conflict theory based on a completely unrelated bankruptcy case in which Akerman represented the debtors-in-possession.[4] None of the parties in this case were debtors, creditors, equity holders, or parties asserting any interest whatsoever in the bankruptcy case. However, Stratmann claims his communications to a receiver—which he does not assert he

---

[3] As noted below, many of these claims are objectively false, such as the claim that a Delaware proceeding was "coordinated by Akerman LLP" when Akerman has nothing to do with the case and does not represent any litigants in the matter.

[4] While the bankruptcy case was in fact completely unrelated to this case, it is notable that Akerman's representation was expressly authorized and approved by the bankruptcy court.

disclosed to anyone, let alone Akerman—should somehow qualify as a conflict even though the receiver was, at times, adverse to the debtors-in-possession. Again, to the extent Stratmann is effectively asserting that Akerman represents interests adverse to him in multiple forums, even if true, that does not present a conflict of interest.

Every District Court that has examined Stratmann's conflict allegations has agreed: there is no conflict. On June 25, 2026, in response to Stratmann's allegations of conflict involving Akerman and Seacoast's counsel of record, Ms. Klopp and Ms. Yoss, the District Court held that "Stratmann's allegations regarding purported conflicts are without merit." [DE 84.] However, this was not the first time Stratmann lodged conflict allegations against Akerman and its counsel.

In the unrelated case, *Starboard Yacht Group LLC v. Contessa Marine Research LLC et al.*, No. 23-61696-CIV-Singhal, Stratmann filed a motion to disqualify Akerman, making the same convoluted and false allegations of conflict that he repeats in the Motion, including that there was purported "enterprise" coordination. [DE 3-1 at 5; attached hereto as Exhibit "A"] Among other things, Stratmann falsely alleged that Akerman represented Contessa Marine Research and Steven Ivankovich; it represented neither.[5] Judge Singhal denied the disqualification motion, stating:

---

[5] *See Starboard Yacht Group LLC v. Contessa Marine Research LLC et al.*, No. 23-61696-CIV-Singhal, DE 293 (S.D. Fla. Feb. 18, 2026) (Exhibit "A").

> Stratmann insists Akerman LLP is involved in a conflict of interest because it represents two different clients who are litigating against Stratmann in different cases. Under no definition is this a conflict of interest ... This is not the law and it is not a common sense application of the law. There is no per se conflict between two or more people who both have claims against the same entity.

*See Starboard Yacht Group LLC v. Contessa Marine Research LLC et al.*, No. 23-61696-CIV-Singhal, DE 313 (S.D. Fla. Mar. 13, 2026) (attached hereto as Exhibit "B").[6] Therefore, Stratmann's disqualification motion, which also requested a bar referral, was denied in its entirety by Judge Singhal months ago. Yet, in this appeal, he continues to make the same spurious allegations of conflict against Akerman and its attorneys.

As he did in the District Court, Stratmann supports his conflict allegations in the Motion with: (1) demonstrably false allegations, including his new allegation that Akerman represented, and then subsequently filed a collection action against, Anthony Ivankovich (it did neither); (2) misrepresentations about the timing of events to claim they have never had a chance to be examined by the District Court;[7] and (3) an unsupported allegation that Akerman's prior representation of debtors-in-

---

[6] The Court may take judicial notice of these filings. *See generally U.S. v. Jones*, 29 F.3d 1549, 1552 (11th Cir. 1994) (citing Fed. R. Evid. 201).

[7] For example, Stratmann repeatedly alleges that Akerman filed a motion for contempt in a bankruptcy case on July 1, 2026, when such motion was filed on May 25, 2025 (and had nothing to do with this case).

possession in an unrelated bankruptcy case is somehow adverse to Seacoast, Stratmann, or SYG. Stratmann's allegations merely reassert his complaint that Akerman is "adverse" to him in multiple proceedings [Doc. 3-1 at 6], a contention that Judge Singhal correctly explained is insufficient to create a conflict.

After Judge Singhal denied the disqualification motion, Stratmann nevertheless sued Akerman and Akerman attorneys—Ms. Klopp and Ms. Yoss—in the District Court based on the same purported conflicts and "enterprise coordination" that Judge Singhal expressly rejected. Stratmann argues that this "new" lawsuit creates a conflict because Akerman is now "adverse" to him as a defendant.[8] However, a litigant cannot manufacture a disqualifying conflict of interest simply by suing opposing counsel. Courts have long recognized that disqualification of counsel is an extraordinary remedy and that a party's litigation conduct cannot be the basis for forcing disqualification. *See In re Kozich*, 534 B.R. 427, 429 (Bankr. S.D. Fla. 2015).

Stratmann has a demonstrated history as a *pro se* litigant who repeatedly disregards court orders and admonishments and files hallucinated citations. However, *"pro se* filings do not serve as an 'impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.'" *Patterson v. Aiken*, 841

---

[8] *Stratmann v. Ivankovich et al.*, No. 0:26-cv-61150-PAB (S.D. Fla.).

F.2d 386, 387 (11th Cir. 1988) (citation omitted). The Court should not countenance Stratmann's twice-rejected conflict allegations as a basis for relief simply because he ignored the District Court and filed a separate lawsuit based on the same rejected contentions. The conflict arguments are not a legitimate ground for staying the Vessel sale; they are a tactic deployed to delay and harass.

## CONCLUSION

For the foregoing reasons, Appellee respectfully requests that this Court deny the Motion.


Respectfully submitted,

/s/ Kristen M. Fiore
KRISTEN M. FIORE, BCS (25766)
**AKERMAN LLP**
201 East Park Avenue, Suite 300
Tallahassee, Florida  32301
Telephone:  (850) 224-9634
Fax:  (850) 222-0103
kristen.fiore@akerman.com


*Counsel for Appellee Seacoast National Bank*

## CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2) and Eleventh Circuit Rule 27-1(a). This response contains 5,199 words, excluding the parts of the response exempted by Fed. R. App. P. 32(f).

This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.



# EXHIBIT A

FILED BY _____ D.C.

FEB 17 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:23-cv-61696-AHS

CONTESSA MARINE RESEARCH LLC,
    Plaintiff,

v.

STARBOARD YACHT GROUP LLC,
    Defendant,

and

CHARLES JACOB STRATMANN,
    Counter-Defendant.

_____/

## MOTION IN LIMINE TO DISQUALIFY AKERMAN LLP AND STAY RELATED FORECLOSURE PROCEEDINGS DUE TO IRRECONCILABLE CONFLICT OF INTEREST

COMES NOW Counter-Defendant Charles Jacob Stratmann ("Stratmann"), appearing individually and pro se, and moves this Court for an Order disqualifying Akerman LLP from representing any party in this action and staying proceedings in the related matter of Seacoast National Bank v. Starboard Yacht Group LLC, Case No. 0:26-cv-60289-WPD (S.D. Fla.). In support thereof, Stratmann states as follows:

### I. INTRODUCTION

This Motion addresses an extraordinary and irreconcilable conflict of interest. Akerman LLP, through attorney Amanda Klopp (FL Bar No. 124156),

currently represents:

(a) Contessa Marine Research LLC and Steven Ivankovich ? as Plaintiff's counsel in this CMR Action, adverse to SYG and Stratmann; AND

(b) Seacoast National Bank ? in a vessel foreclosure action filed February 12, 2026, Case No. 0:26-cv-60289-WPD, also adverse to SYG and Stratmann.

Akerman is literally suing SYG and Stratmann on behalf of two different clients in two different federal cases in the same district at the same time. This is a textbook concurrent conflict prohibited by Florida Bar Rule 4-1.7.

## II. FACTUAL BACKGROUND

### A. Akerman's Role in the CMR Action

1. On March 7, 2025, Akerman LLP appeared in this CMR Action by filing a "Notice of Settlement" (DE 187) on behalf of LMC, an entity implicated in the enterprise structure. This filing established Akerman's representation of enterprise participants against SYG.

2. Akerman's involvement expanded through the Safe Harbor Marinas/Blackstone settlement, in which Akerman represented entities that are alleged participants in the RICO enterprise ? specifically, entities involved in the lockout, extortion, and financial destruction of SYG.

### B. Akerman's Concurrent Representation of Seacoast

3. On December 18, 2025, Amanda Klopp, on behalf of Seacoast National Bank, sent the first demand letter to SYG and Stratmann personally, demanding vessel inspection and threatening acceleration of a $176,503.10 promissory note.

4. On January 6, 2026, Klopp issued a second letter accelerating the

loan.

5. On January 9, 2026, Klopp issued a third letter instituting an 18% default interest rate and demanding immediate vessel turnover.

6. On January 26, 2026 ? the critical document ? Klopp sent a letter DENYING any conflict of interest. This letter is the "smoking gun." Despite simultaneously representing CMR against SYG in this CMR Action, Klopp wrote that there is no conflict in also representing Seacoast to sue SYG. This denial is legally and factually untenable.

7. On February 12, 2026, Akerman formalized the conflict by filing the vessel foreclosure complaint in Seacoast National Bank v. SYG LLC (Case No. 0:26-cv-60289-WPD). The same day, Klopp deployed National Liquidators ? a private vehicle repossession/liquidation company ? to attempt to locate and seize the vessel WITHOUT any Warrant of Arrest or court order.

C. Information Weaponization

8. Through discovery in this CMR Action, Akerman possesses detailed knowledge of SYG's:
- Financial condition (bank statements, revenue, debts);
- Asset structure (including the vessel at issue);
- Litigation strategy and defense theories;
- Witness information.

This knowledge, obtained as RICO defense counsel, is being directly weaponized in the Seacoast foreclosure action. The timing of the acceleration (January 2026 ? during peak pre-trial preparation) and the complaint filing (February 12, 2026 ? 11 days before the RICO trial) is not coincidental. It is strategic litigation warfare.

III. LEGAL ARGUMENT

A. Florida Bar Rule 4-1.7 ? Concurrent Conflict of Interest

Rule 4-1.7(a) provides:

> "A lawyer shall not represent a client if:
> (1) the representation of 1 client will be directly adverse to
>     another client."

Akerman is directly adverse to SYG in BOTH cases. No waiver was sought or obtained. No waiver is possible given the RICO allegations.

Under Rule 4-1.7(b), even if waiver were theoretically available, it would require "informed consent, confirmed in writing." No such consent exists. The January 26 denial letter proves the opposite: Akerman affirmatively asserted there IS no conflict, rather than seeking to waive one.

## B. The "Hot Potato" Doctrine

If Akerman attempts to cure this conflict by withdrawing from one matter, the "Hot Potato" doctrine prevents a firm from dropping a client to keep another. Picker Int'l, Inc. v. Varian Assocs., Inc., 670 F. Supp. 1363, 1365 (N.D. Ohio 1987). Akerman cannot fire CMR to keep Seacoast, or fire Seacoast to keep CMR, and thereby cleanse the conflict retroactively.

## C. Enterprise Coordination

Most significantly, this dual representation itself constitutes evidence of coordinated conduct directly relevant to the enterprise allegations already at issue in this case. The foreclosure is not an independent debt collection. It is a coordinated component of the same scheme that:

- Destroyed SYG's revenue through tortious interference (Seakeeper/ Madison Industries);
- Locked SYG out of its marina facility (Blackstone/Safe Harbor Marinas);
- Filed overlapping lawsuits to drain SYG's resources (CMR, Heron, TD Bank, AmEx);

- And now is stripping SYG's last tangible asset (the vessel) through a foreclosure timed to coincide with the RICO trial.

The pattern is unmistakable: financial annihilation designed to prevent SYG and Stratmann from reaching trial.

## IV. RELIEF REQUESTED

WHEREFORE, Counter-Defendant Stratmann respectfully requests that this Court enter an Order:

1. DISQUALIFYING Akerman LLP from representing Contessa Marine Research LLC and/or Steven Ivankovich in this action;

2. DISQUALIFYING Akerman LLP from representing Seacoast National Bank in Case No. 0:26-cv-60289-WPD;

3. STAYING all proceedings in Seacoast National Bank v. Starboard Yacht Group LLC (Case No. 0:26-cv-60289-WPD) pending resolution of this CMR Action, to prevent the use of coordinated foreclosure as an instrument of litigation warfare;

4. REFERRING Akerman LLP's conduct to The Florida Bar for investigation of violations of Rules 4-1.7, 4-1.6, and 4-8.4;

5. GRANTING such other relief as this Court deems just and proper.

Respectfully submitted,

/s/ Charles Jacob Stratmann

_____

CHARLES JACOB STRATMANN
Counter-Defendant, Pro Se
545 NE 17th Avenue
Fort Lauderdale, FL 33301

Telephone: (954) 873-8546
Email: jake@starboardyacht.com

Date: February 17, 2026

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 17, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, including:

Steven A. Goldstein, Esq.
Counsel for Plaintiff Contessa Marine Research LLC
[via CM/ECF]

Amanda Klopp, Esq.
AKERMAN LLP
777 South Flagler Drive, Suite 1100 West Tower
West Palm Beach, FL 33401
amanda.klopp@akerman.com
[via CM/ECF]

Jeanette Martinez-Goldberg, Esq.
AKERMAN LLP
jeanette.martinezgoldberg@akerman.com
[via CM/ECF]

/s/ Charles Jacob Stratmann
Charles Jacob Stratmann, Pro Se



# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-61696-CIV-SINGHAL

STARBOARD YACHT GROUP LLC,

Plaintiff/Counter-Defendant,

vs.

CONTESSA MARINE RESEARCH, LLC,

Defendant/Counter-Plaintiff,

vs.

CHARLES JAKE STRATMANN,

Counter-Defendant.
_____/

## **ORDER**

**THIS CAUSE** is before the Court on Counter-Defendant Stratmann's Motion in Limine to Disqualify Akerman LLP and Stay Related Foreclosure Proceedings Due to Irreconcilable Conflict of Interest (the "Motion") (DE [293]).  Stratmann insists Akerman LLP is involved in a conflict of interest because it represents two different clients who are litigating against Stratmann in different cases.  Under no definition is this a conflict of interest. If this Court adopted Stratman's definition of conflict of interest, a defendant who had allegedly wronged 25 people would then be able to argue that 25 different lawyers need to bring suit.  This is not the law and it is not a common sense application of the law. There is no per se conflict between two or more people who both have claims against the same entity.

A well-known example is that Deshaun Watson—NFL quarterback—was sued by 25 different women in 25 different lawsuits, each alleging they were owed civil damages

for sexual assault.  One lawyer—Tony Buzbee—handled these cases on behalf of the victims.  That is how it normally works.  Closer to home, local lawyer Sigrid McCawley represented at least eight women suing Jeffrey Epstein for civil damages related to sexual assault.  Florida Bar Rule 4-1.7(a) prohibits a lawyer from representing "a client if the representation of one client will be directly adverse to another client."  This prohibits a lawyer from representing client Smith who is suing client Jones.  It does not prohibit a lawyer from representing client Smith against non-client Doe in one case, and client Jones against non-client Doe in another case.  Counter-Defendant here has no claim to force those suing him to each hire independent lawyers.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Stratmann's Motion (DE [293]) is **DENIED.**[1]

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 13th day of March 2026.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished counsel via CM/ECF
and via Postal Service to:

Charles Jake Stratmann
545 NE 17th Ave
Fort Lauderdale, FL 33001

---

[1] The Court notes this Motion was also denied on the record at the bench trial on February 23, 2026.  See (DE [312] at p. 129).

2