IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

Appeal No. 26-12270-G

CHARLES JACOB STRATMANN,

Appellant,

v.

SEACOAST NATIONAL BANK,

Appellee.

_____

**APPELLANT'S REPLY IN SUPPORT OF EMERGENCY MOTION FOR STAY**

**OF CONFIRMATION OF JUDICIAL SALE AND FOR INJUNCTION**

**PENDING APPEAL**

Charles Jacob Stratmann ("Appellant"), pro se, respectfully replies to Appellee's

Response [Doc. 14] opposing the Emergency Motion for Stay [Doc. 3], filed pursuant

to Federal Rule of Appellate Procedure 8 and the All Writs Act, 28 U.S.C. Section

1651.

**INTRODUCTION**

Appellee devotes 23 pages to arguing that this appeal is moot, that the sale was

fair, and that the conflict allegations are meritless. What Appellee does not

address is more revealing than what it does.

Appellee does not address the 35LX marketing email -- documentary evidence from its own agent, National Liquidators, marketing the vessel under a nonexistent model designation. Appellee does not address the HIN discrepancy in its own Verified Complaint. Appellee does not address the fact that DE 109 was entered thirteen days before the response deadline on DE 108 expired. Appellee does not address the video evidence contradicting the Kups Declaration. Appellee does not offer a competing appraisal. And Appellee does not address the ACAP jurisdictional deferral letter from the Florida Bar.

This reply addresses what Appellee argues and what it chose to ignore.


## 1. THE APPEAL IS NOT MOOT

Appellee's mootness argument rests on two propositions: that title transferred upon confirmation, and that no court can "reach the Vessel after confirmation." Doc. 14 at 6 (citing Community Bank of Lafourche v. Lori Ann Vizier, Inc., 541 F. App'x 506 (5th Cir. 2013), and Salazar v. Atlantic Sun, 881 F.2d 73 (3d Cir. 1989)).

Neither citation is controlling. Community Bank of Lafourche is an unpublished Fifth Circuit opinion -- not precedential even in the Fifth Circuit, and not binding in this Circuit. Salazar is a Third Circuit decision, equally non-binding here.

The Supreme Court addressed this precise question three years after every case

Appellee cites. In MOAC Mall Holdings LLC v. Transform Holdco LLC, 598 U.S. 288, 143 S. Ct. 927 (2023), the Court held unanimously that statutory sale-finality provisions are not jurisdictional, and that appellate courts retain the power to review sale orders even after consummation. While MOAC arose in the bankruptcy context, its jurisdictional analysis reinforces the principle that consummation of a sale does not automatically deprive an appellate court of authority to review the challenged order. Appellee's argument that confirmation automatically extinguishes appellate review is precisely the argument the Supreme Court unanimously rejected. See also Chafin v. Chafin, 568 U.S. 165, 172 (2013) (a case becomes moot only when "it is impossible for a court to grant any effectual relief whatever to the prevailing party").

Moreover, effectual relief remains fully available on this record:

1. The Proceeds are Secured: The purchase funds ($160,000.00) remain in federal custody. They have not been distributed.

2. The Vessel is Present: The vessel M/V Slow Ur Roll II remains physically located within the Southern District of Florida and within the court's in rem jurisdiction.

3. Appellate Vacatur Remedy: If Appellant prevails on appeal, this Court can vacate the confirmation and direct return of the vessel or, in the alternative, direct disposition of the proceeds.

Mootness requires that no effective relief can be granted. That threshold is not met.

**2. THE 16% SALE PRICE IS UNREBUTTED**

Appellee calls the Anstey appraisal "stale" and "unverified." Doc. 14 at 8-9. But it is the only valuation evidence in the record. Appellee -- represented by an AmLaw 100 firm on behalf of a $20.8 billion publicly traded bank -- submitted no competing appraisal. The vessel sold for $160,000 against an appraised value of $1,000,000: sixteen percent.

Appellee cites Wong Shing v. M/V Mardina Trader, 564 F.2d 1183 (5th Cir. 1977), for the principle that courts should exercise "extreme caution" before disturbing a sale. Doc. 14 at 8. But Wong Shing confirmed a sale at approximately 40% of value -- and only after finding no fraud, collusion, or irregularity. At 16%, this sale is less than half the Wong Shing ratio. In Ballentyne v. Smith, 205 U.S. 285 (1907), the Supreme Court refused to confirm a judicial sale at approximately 14% of value -- nearly identical to this case. There, the Court held that a sale price so grossly inadequate "as to shock the conscience" justified refusing confirmation, even absent fraud. 205 U.S. at 290.

Appellant does not contend that 16% automatically requires vacatur. But 16% combined with the process irregularities documented in the record -- the same-day Sales Agent Agreement, the wrong model designation, the ten-second close, and the phone bidder relay failure -- places this sale squarely within the territory where courts have refused confirmation or reversed.

Appellee cites Redus Florida Commercial, 777 F.3d 1187, 1193 n.15 (11th Cir. 2014), for the "presumption that a property's sales price at a valid judicial sale

is conclusive as to the property's value." That presumption assumes a valid sale -- one properly marketed, fairly conducted, and free of irregularity. The evidence here challenges every one of those predicates.

**3. THE 35LX MARKETING EMAIL IS UNREBUTTED**

National Liquidators -- Appellee's court-appointed agent -- distributed an auction announcement email identifying the vessel as a "2008 Everglades 35LX." There is no such vessel. The correct designation is "Everglades 350LX." National Liquidators' own listing URL uses "350lx," confirming the marketing email is wrong.

Appellee's Response does not mention this evidence. It does not dispute it. It does not explain it. This is documentary proof, from Appellee's own agent, that the vessel was marketed under a model designation that does not exist. A buyer searching for an "Everglades 350LX" would not find an "Everglades 35LX." The wrong model designation directly suppressed the buyer pool -- and directly explains why a million-dollar vessel sold for $160,000.

Appellee argues that "fifty showings, ten registered bidders, and twenty competitive bids belie any suggestion that the sale process was flawed." Doc. 14 at 11. But showings and bids from buyers who found a "35LX" do not establish that qualified buyers searching for a "350LX" -- the actual vessel -- were reached. The question is not how many people showed up. The question is whether the people who would pay the vessel's actual value were able to find it. The 35LX error proves they were not.

**4. THE CONFIRMATION WAS ENTERED BEFORE THE RESPONSE DEADLINE EXPIRED**

On July 14, 2026, Appellee filed DE 108 -- Motion for Confirmation of Sale. The CM/ECF system set a response deadline of July 28, 2026. On July 15, 2026 -- thirteen days before the response deadline -- the Clerk entered DE 109, confirming the sale.

Appellant was preparing an opposition to DE 108 on July 15, the day after it was filed. The Court granted the motion before Appellant could be heard on it. No exigency required this acceleration: the vessel was in custody, the funds were in federal custody, and no party faced harm from waiting for the response period to expire.

Additionally, DE 109 states that "no objection has been filed to the sale." This is factually false. DE 92, DE 96, and DE 97 are on the docket. They were overruled by DE 107 -- but they were filed. The Clerk's Confirmation misrepresents the record to the U.S. Marshal.

Appellee's Response does not address any of this.

**5. THE VIDEO EVIDENCE CONTRADICTS THE KUPS DECLARATION**

Appellee relies heavily on the Kups Declaration (DE 99-1) and its description of "ten registered bidders" and "twenty bids." Doc. 14 at 4-5, 8, 11. Appellee does not address the video evidence (DE 105, Exhibit R-1) showing:

   (a) A phone bidder acknowledged at approximately 178.92 seconds;

(b) A relay communication failure at approximately 181.92 seconds;

(c) An entire close sequence -- from bid announcement to "sold" -- lasting approximately ten seconds (255.92s to 257.92s); and

(d) An audible objection -- "Mr. Wolf, no, no, no" -- immediately after "sold" (265.92s), directly contradicting Kups' sworn statement that he was "unaware of anyone having objected" (DE 99-1, paragraph 11).

Appellee argues that the phone bidder "made no attempt to come forward after the auction." Doc. 14 at 10. But Appellant filed a Motion for Disclosure (DE 96) seeking the phone bidder's identity -- and the district court denied it (DE 107). Appellee cannot fault Appellant for failing to produce evidence that Appellee's own motion to deny disclosure prevented him from obtaining.

## 6. THE DEPOSIT REQUIREMENT DOES NOT EXTINGUISH THE COURT'S SUPERVISORY DUTY

Appellee argues that Appellant's objections "could never have succeeded" because he failed to post the E(17)(g)(ii) deposit. Doc. 14 at 11. This argument confuses a party's procedural obligation with the court's substantive duty.

Under Wong Shing, 564 F.2d at 1188-89, and Supplemental Rule E(9)(a), the court has an independent obligation to scrutinize a judicial sale before confirmation -- regardless of whether a party's formal objection satisfies every local-rule prerequisite. That supervisory duty derives from the court's admiralty jurisdiction and its inherent power over sales conducted under its decree. It does

not derive from, and cannot be extinguished by, a local rule governing party deposits.

Moreover, Appellant is indigent. The IFP motion filed in this Court establishes total liquid assets of $105.58 and zero monthly income. A local rule cannot condition a party's right to be heard on a financial deposit the party cannot pay. And the deposit is moot: Wilson paid in full -- there are no custodial costs to fund.

Additionally, no supersedeas bond is required for the stay sought here. This motion seeks a stay under FRAP 8 and the All Writs Act to preserve this Court's jurisdiction -- not under FRCP 62(b). Because the $160,000.00 sale proceeds are already held in federal custody, Appellee's judgment is fully secured.

## 7. THE CONFLICT ARGUMENT ADDRESSED THE WRONG CONFLICT

Appellee devotes five pages to refuting the proposition that "representing two different clients who are litigating against Stratmann in different cases" creates a conflict. Doc. 14 at 18-23. That is not the conflict Appellant raised.

The conflict is that Akerman simultaneously represents Seacoast -- which is owed $1.55 million by Ivankovich-controlled entities -- and serves as DIP counsel for those same Ivankovich entities in bankruptcy (Case No. 24-15755-PDR). Akerman cannot aggressively pursue the Ivankovich debt on Seacoast's behalf while simultaneously representing those entities. That is a direct conflict under Florida Rule 4-1.7(a): representation of Client A while simultaneously

representing the adversary of Client A. Judge Singhal's order (Exhibit B to Doc. 14) did not address this pillar -- it addressed only the "two clients suing the same defendant" theory.

The Florida Bar's ACAP closure letter (Exhibit Q, filed with Appellant's Supplemental Notice) expressly deferred the conflict question to "the proper tribunal," stating Appellant's allegations "present questions of law and involve a dispute over which a court has jurisdiction." This is not an exoneration -- it is an invitation for this Court to examine the conflict. Appellee's Response does not mention the ACAP letter.

## 8. ERRATA ACKNOWLEDGMENT

Appellant's Emergency Motion (Doc. 3) cited Combs v. Aetna Finance Co., 616 F.2d 976 (7th Cir. 1980). Appellee correctly notes this citation does not appear to correspond to an actual decision under that caption. Doc. 14 at 10. Appellant withdraws this citation. The proposition for which it was cited -- that the court's supervisory duty extends to reviewing marketing adequacy -- is independently established by Wong Shing, 564 F.2d at 1188-89, and Supplemental Rule E(9)(a). This withdrawal does not affect any argument in this Reply, none of which relies on Combs.

## CONCLUSION

The sale of M/V Slow UR Roll II at 16% of appraised value, marketed under a

nonexistent model designation, confirmed before Appellant could respond to the confirmation motion, and supported by a sworn declaration contradicted by video evidence, presents serious questions going to the merits. No party is harmed by preserving the status quo while this Court considers those questions. The purchase funds remain in federal custody. The purchaser risks nothing. The creditor's recovery is unchanged by timing.

Appellant respectfully requests that this Court grant the Emergency Motion for Stay, or in the alternative grant an administrative stay preserving the status quo pending full consideration.

Respectfully submitted,

/s/ Charles Jacob Stratmann

Charles Jacob Stratmann

Pro Se Appellant

545 NE 17th Avenue

Fort Lauderdale, Florida 33301

Telephone: (954) 873-8546

Email: jake@starboardyacht.com

Dated: July 20, 2026

**CERTIFICATE OF COMPLIANCE**

This reply complies with the type-volume limitations of Federal Rule of Appellate

Procedure 27(d)(2). This reply contains fewer than 2,600 words, excluding the parts exempted by Fed. R. App. P. 32(f). This reply has been prepared in a proportionally spaced typeface using 14-point Times New Roman font.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2026, I filed the foregoing Reply with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit via the Court's CM/ECF system, and served a copy via email on:

Kristen M. Fiore, Esq.

Akerman LLP

201 East Park Avenue, Suite 300

Tallahassee, Florida 32301

kristen.fiore@akerman.com

Amanda Klopp, Esq. and Jenna M. Yoss, Esq.

Akerman LLP

777 S. Flagler Drive, Suite 1100 -- West Tower

West Palm Beach, FL 33401

amanda.klopp@akerman.com

jenna.yoss@akerman.com

/s/ Charles Jacob Stratmann

Charles Jacob Stratmann